IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. _____

In re Application of

LINDA FISCHER

                     Applicant,

To Issue a Subpoena for the Taking of a
Deposition and The Production of Documents.

**MEMORANDUM OF LAW IN SUPPORT OF LINDA FISCHER'S *EX PARTE*
APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782**

# TABLE OF CONTENTS

<u>Page</u>

INTRODUCTION ................................................................................................................ 1

FACTUAL BACKGROUND .............................................................................................. 4

    I.     Michael Fischer And His Co-Conspirators Defraud Linda Of Her Inheritance ................................................................................................ 4

    II.    Linda Prepares Litigation In The British Virgin Islands And Seeks Discovery In Aid Of That Foreign Suit. ................................................ 7

ARGUMENT ...................................................................................................................... 9

    I.     Linda's Application Satisfies The Statutory Requirements For Granting Discovery Pursuant To 28 U.S.C. § 1782 ............................................. 10

    II.    The Discretionary Factors Weigh In Favor Of Linda's Application ................... 15

    III.   It Is Routine And Proper To Grant Linda's Application Ex Parte ....................... 18

CONCLUSION ................................................................................................................. 19

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Accent Delight Int'l Ltd.*,
869 F.3d 121 (2d Cir. 2017)................................................................12

*In re Alianza Fiduciaria SA.*,
2013 WL 6225179 (S.D. Fla. Oct. 24, 2013)................................................18

*In re Applic. of Bracha Found.*,
663 F. App'x 755 (11th Cir. 2016) ...........................................10, 13, 15

*In re Applic. of Bracha Found. Request for Discovery*,
2015 WL 6123204 (N.D. Ala. Oct. 19, 2015), *aff'd in part, vac. in part on other grounds by Bracha Found.*, 663 Fed App'x 755 (11th Cir. 2016)................16, 19

*Applic. of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*,
747 F.3d 1262 (11th Cir. 2014) ...........................................................11

*In re Applic. of Edelman*,
295 F.3d 171 (2d Cir. 2002)................................................................14

*In re Applic. of MTS Bank*,
2017 WL 3276879 (S.D. Fla. Aug. 1, 2017)................................................14

*In re Applic. of Setraco Nigeria Ltd.*,
2013 WL 3153902 (M.D. Fla. June 19, 2013)................................................11

*In re Application of Mesa Power Group, LLC*,
878 F. Supp. 2d 1296 (S.D. Fla. July 13, 2012)................................................18

*Att'y Gen. of the British V.I. v. Hyman*,
2020 WL 2615519 (D.D.C. May 23, 2020)................................................13, 15, 16

*In re Bayer AG*,
146 F.3d 188 (3d Cir. 1998)................................................9, 10, 13, 16

*In re Bernal*,
2018 WL 6620085 (S.D. Fla. Dec. 18, 2018)................................................12

*In re Braga*,
272 F.R.D. 621 (S.D. Fla. 2011)................................................19

# TABLE OF AUTHORITIES

*(continued)*

Page(s)

*In re Chevron Corp.*,
    2012 WL 3636925 (S.D. Fla. June 12, 2012) ......................................................................16

*In re Clerici*,
    481 F.3d 1324 (11th Cir. 2007) ......................................................9, 11, 15, 17, 19

*In re Dep'ts of Antioquia*,
    2017 WL 6557417 (S.D. Fla. Oct. 27, 2017)........................................................11

*Euromepa S.A. v. R. Esmerian, Inc.*,
    51 F.3d 1095 (2d Cir. 1995).........................................................................16

*In re Ferrer*,
    2018 WL 3240010 (S.D. Fla. July 3, 2018)........................................................12

*Furstenberg Finance SAS v. Litai Assets*,
    877 F.3d 1031 (11th Cir. 2007) ......................................................................11

*Gushlak v. Gushlak*,
    486 F. App'x 215 (2d Cir. 2012) ......................................................18, 19

*In re H.M.B. Ltd.*,
    2018 WL 4778459 (S.D. Fla. July 2, 2018)........................................................16

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004)..........................................................3, 9, 10, 11, 15, 17

*JSC MCC EuroChem v. Chauhan*,
    2018 WL 3872197 (M.D. Tenn. Aug. 15, 2018) ....................................................16

*In re Letter of Request from the Crown Prosecution Serv. of the U.K.*,
    870 F.2d 686 (D.C. Cir. 1989) ......................................................................11

*In re Letter of Request From Dist. Court Stara Lubovna*,
    2009 WL 3711924 (M.D. Fla. Nov. 5, 2009) ......................................................14

*Minatec Fin. S.A.R.L. v. SI Group Inc.*,
    2008 WL 3884374 (N.D.N.Y Aug. 18, 2008) ....................................................17

*In re Pimenta*,
    942 F. Supp. 2d 1282 (S.D. Fla. 2013) ..................................................................16

*Weber v. Finker*,
    554 F.3d 1379 (11th Cir. 2009) ......................................................................17

**TABLE OF AUTHORITIES**
*(continued)*

<u>Page(s)</u>

**Statutes**

28 U.S.C. §1782.....................................................................................................................3, 9, 11, 18

## INTRODUCTION

This application for discovery in aid of a foreign proceeding represents one step on a long road to justice for Petitioner Linda Fischer, an unexpected heiress who has been and continues to be swindled by her own brother, the late Michael Fischer, a man who broke his family, stole literally millions of dollars from his oft-deathly ill sister, and spewed a mountain of lies to cover his tracks, and her brother's accomplices.  The road to justice, however, starts with truth—and that's precisely why Linda brings this application for discovery pursuant to 28 U.S.C. § 1782.  She seeks this Court's help in uncovering critical information to aid her pursuit of contemplated foreign claims against the entities to which her brother unlawfully funneled her money and the entities which continue to be used as the vehicle to defraud her.

Although immensely wealthy today, Linda never expected to be an heiress.  For most of her life, she struggled financially and with her health, trying to raise her daughter as a single parent with a minimal safety net and little family around her.  Dating from her childhood, her health problems have been severe—the result of Nazi experimentation on her mother at Auschwitz by the infamous Joseph Mengele.  And when Linda's parents later divorced and her mother committed suicide, Linda was left to rely on her older brother, Michael D. Fischer—then the only real remaining member of her family.

But Linda's life changed fundamentally when, after she and Michael reconnected with their estranged father on his deathbed, they discovered they had each inherited tens of millions of dollars their father had amassed.  All of a sudden, Linda was worth millions in unexpected, newfound wealth.  As she had done for decades since their parents left their lives, Linda turned to her older brother, Michael D. Fischer, who had claimed to be a successful businessman based on his own real estate investments.  Michael pledged to help her manage her money, hiring lawyers and bankers to assist them, proposing investments for the siblings to make together, and advising Linda

1

that they could pool their new resources to develop a Fischer family business to protect their father's wealth for future generations.  Linda was grateful and trusted her successful brother, knowing she needed to rely on him particularly in light of her debilitating health conditions—some of which can render her incapacitated for months on end.

But Michael (and his accomplices) lied, and lied repeatedly.  Abusing Linda's trust and taking advantage of her health, Michael siphoned money from her, fraudulently induced her to fund businesses he promised she would own, and pretended to "jointly" purchase properties with Linda, while conspiring to deny her ownership rights and scheming to deprive her of the equity in and profits from their joint real estate investments.  Instead of investing her money in property or entities that she would *jointly* own with him, he directed *her* money to companies he owned outright through a complex web of corporate shell companies.  Those companies include multiple BVI entities that sit at the top of a holding structure of foreign and American companies that ultimately purport to own property in multiple places, including New York and Miami, that Michael had promised would belong equally to Linda.

Now that she's discovered certain fraud, Linda is preparing to bring litigation in foreign courts against the BVI entities that claim to own the property in which she had been told she invested and through which there is an ongoing scheme to deprive Linda of her investments.  These companies have aided and abetted Michael's lies, his fraud, and his fiduciary breaches and were unjustly enriched through cash infusions of Linda's stolen money amounting to at least $10 million.  To that end, Linda has engaged counsel in the BVI and has commanded investigators to gather evidence to commence her BVI litigation and to pursue justice.

In order to make her case, however, Linda seeks this Court's help.  Numerous subsidiaries in the corporate chain leading to where Michael and his accomplices ultimately stashed her cash

are found right here in Florida—including two companies named XL Funding, Inc., and Blackstone Equities, LLC ("XL Funding" and "Blackstone," respectively).  Both of those entities in turn are owned by a BVI entity—a prospective defendant in Ms. Fischer's impending litigation.  Similarly, the architects of these entities—including Michael Fischer's longtime partner Svetlana Astafurova—live here in Miami, too.  These discovery targets—as well as, because Michael recently passed away, the Estate of Michael Fischer—have critical information about where Linda's money went and the web of deception undergirding Michael's fraud that this Court can help Linda uncover.

To that end, Linda respectfully requests that the Court enter an order pursuant to 28 U.S.C. § 1782 permitting her to serve upon the Estate of Michael Fischer (the "Estate"), Ms. Astafurova and the Florida entities—XL Funding and Blackstone—discovery in the form of that appended to the Declaration of Reed Brodsky filed in support of this application ("Brodsky Decl.").  Section 1782 permits the taking of discovery from persons within the United States in aid of a contemplated foreign proceeding, provided that the target "resides" or may be "found . . . in" this district, and provided that the parties seeking the discovery are "interested person[s]" in that proceeding.  Each of these requirements is met here:  Linda as a prospective plaintiff in impending BVI litigation seeks documents and testimony from individuals or entities that "reside[]" or are "found . . . in" this judicial district.  28 U.S.C. § 1782(a).  That is a classic application of Section 1782.

Similarly, each of the four factors that the Supreme Court established to guide this Court's discretion in permitting discovery pursuant to Section 1782 weigh strongly in favor of awarding discovery here.  *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264–65 (2004).  *First*, Ms. Astafurova, XL Funding, and Blackstone Equities are not parties to the contemplated BVI Lawsuit against Mr. Fischer's BVI entities.  *Second*, courts in the BVI are receptive to

3

information obtained through Section 1782, meaning they consider such information to be usable evidence.  *Third*, the discovery here does not seek to circumvent any proof-gathering restrictions in the BVI.  *Fourth*, the discovery requested is not unduly burdensome, does not seek privileged information, and is limited to specific topics relevant to Linda's claims for relief in the BVI and recovery of her stolen funds.

Linda therefore respectfully requests that this Court approve the application and permit Linda to serve her proposed subpoenas seeking documents and testimonial evidence to aid her impending BVI litigation.

## FACTUAL BACKGROUND

### I.    The Ongoing Fraud of the Late Michael Fischer And His Co-Conspirators

On January 27, 1945, Soviet forces arrived at Auschwitz and began the process of liberating the prisoners that had survived the Nazi death camp.  Linda's mother was among the prisoners.  She had been imprisoned there since she was captured by the Nazis and had suffered unspeakable horrors during her time in the camp.  *See* Declaration of Linda Fischer (Feb. 8, 2021) ¶ 2.  In addition to being tortured, starved, and forced into grueling labor, Linda's mother was also one of the victims of Joseph Mengele's infamous human experimentation program.  *Id.*  While in Auschwitz, she endured many of the inhumane experiments that gave Mengele his moniker "the Angel of Death."  She never fully recovered from the physical and mental trauma of this experience.  *Id.*

After the war, Linda's parents married and had two children: Michael in 1948 and Linda in 1953.  But the effects of the Holocaust continued to reverberate, with Linda's mother suffering from mental and physical health problems for decades as a result of the experimentation conducted on her at Auschwitz.  These Mengele-induced health problems were so severe that they even left their mark on subsequent generations, including Linda and her brother.  *Id.*  Linda has been

seriously ill since her childhood and has been diagnosed with numerous autoimmune diseases.  *See id.*  She has suffered from life-threatening heart, lung and bone complications, and has had to undergo multiple risky surgeries, including around a half dozen serious surgeries in the past few years alone.  For most of her life, Linda has spent a significant portion of each year hospitalized and bedridden.

Going into the new millennium, Linda was surviving but hardly thriving.  She was struggling financially and trying to support her daughter as a single parent while also managing chronic, debilitating health issues.  *Id.* ¶ 3.  By contrast, Michael had appeared to become successful in real estate investments in Miami, Florida.  *Id.* ¶ 5.  But Linda's fortunes soon changed when, in the year 2000, she received a call from her paternal half-brother, David Fischer.  David was calling to tell Linda that their father, Jakob, was terminally ill.  Linda and Michael both traveled to Israel to say goodbye to their only living parent.  Jakob Fischer passed away shortly thereafter.  *See id.* ¶ 3.

After their father's death, Linda and Michael received a call from Lombard Odier, a Geneva-based bank.  Linda assumed that they were calling to inform the siblings that their father had left a balance in one of his accounts.  Jakob Fischer had held himself out to be a poor man, and at the time of his death, appeared to be in a dire financial situation.  In fact, Lombard Odier was calling to let the Fischer children know that their father had left behind an estate worth hundreds of millions.  *Id.* ¶¶ 3–4.  Each of Jakob Fischer's six children ultimately received a portion of the inheritance, amounting to tens of millions of dollars each.  *Id.* ¶ 3.

Linda, having struggled financially her entire life, was overwhelmed at this news and immediately turned to her older brother, whom she trusted and believed to have been successful financially.  *Id.*  She relied on her brother to help her with the paperwork and make the necessary

preparations to receive her portion of the inheritance and to engage a European legal team to assist them with their newfound wealth. *Id.* ¶¶ 4–5.

While Michael and Linda were preparing to receive their inheritance, Michael approached Linda about pooling their resources to make a series of co-investments. *Id.* ¶ 5. He pointed out to Linda that she had no financial acumen, and claimed that he already had great success in real estate. Michael said that he, with the help of his (and soon to be Linda's) lawyer and associate Jeffrey Slavet, was perfectly situated to manage the Fischer siblings' inheritance. *Id.*

Linda was impressed with what her brother had told her about his success in the Florida real estate market. Michael was very persuasive. He assured her that he was an investment professional and, as her older brother, would serve as her fiduciary and take her interests to heart. *Id.* ¶ 6. Linda knew that she was not in a good position to manage and invest her inheritance—she found it overwhelming to keep up with her new team of bankers and investment advisors, and she did not have any investment experience. *Id.* Michael's idea of creating a partnership to manage their newfound wealth seemed like a good solution.

Michael's plan was seemingly straightforward. With Slavet's help, Michael would source and purchase real estate on the siblings' behalf, subject to Linda's prior approval of the specific properties to be purchased. Michael claimed that this partnership, under his management, would make it easy for Linda to grow her principal without adding stress to her life—all she had to do was approve the specific purchases of real estate, provide the capital, and she would receive fifty percent of the ownership and equity in these co-investments. *Id.* Linda wouldn't have to worry about the rest. He told her he would establish companies for them to hold their real estate assets and he persuaded Linda to ultimately "invest" at least $5 million in properties he claimed would be jointly owned. *Id.* ¶ 7.

Linda did not understand how any of this worked.  At this point in her life, she had never invested significant sums of money in real estate, but she felt comforted by the fact that Michael was investing his own money along with hers and would share equally in any profits or losses. *See id.*  Linda also believed that that her brother and Slavet were experienced real estate investors. The two men assured her that they would help her handle the logistics and represent her and her interests faithfully.  *See id.*

Over the years, Michael and Slavet assured Linda that they had been managing her money and purchasing the properties they promised.  They even lulled her into thinking they were faithful fiduciaries by purchasing apartments purportedly for Linda to use and yet placed those properties in the names of companies in which she had no interest.  *See id.* ¶¶ 8–11.  They went further, too. In fact, Michael, who had signatory authority over a number of Linda's bank accounts, made an additional at least *$5 million in unauthorized withdrawals from Linda's bank accounts* during times in which she was seriously ill and bedridden.  *Id.* ¶ 11.  Simply put, he abused Linda's trust, took advantage of her illness, and stole from her—funneling money into BVI companies in which she lacked any interest.  *Id.* ¶¶ 10–11.

## II.     Linda Prepares Litigation In The British Virgin Islands And Seeks Discovery In Aid Of That Foreign Suit.

As Linda has emerged from her numerous illnesses and discovered the depth of her brother's deception, she began to enforce her rights.  To that end, she retained investigators to pursue her stolen funds.  Fischer Decl. ¶ 12.  Her investigators scoured the entities that received the proceeds of Michael's thefts, including companies in New York and Florida as well as their ultimate owner entities in the BVI.  Property, for instance, located in New York that Linda was told belonged to her did not show her as a record owner:  Michael had purchased cooperative apartments in New York City not in Linda's name but rather in the name of a New York

Corporation called Lombardy 711, Inc., in turn owned by a corporation called XL Funding, that was in turn owned by a BVI entity Viterbi Services Ltd. ("Viterbi"). *Id.* ¶ 10. Another property in Miami in which Michael told Linda he had invested her money was owned ultimately by Viterbi as well. *See id.* It seems, then, that Michael invested not for his sister but in himself, stealing her funds without telling her and placing them into complex corporate structures ultimately owned by his own BVI entities, and for the ongoing benefit of Michael and his accomplices, who continue to deprive Linda of the fruits of her co-investments.

In addition to hiring investigators to pursue the truth, Linda also retained local counsel in the BVI to investigate the potential claims she might bring. *Id.* ¶ 12. Counsel's research, as developed in the supporting declaration of one of the world's leading asset-recovery lawyers, Martin Kenney, indicates that numerous claims are available to her to pursue against the BVI entities that Michael's fraud unjustly enriched and who were co-conspirators in his scheme. Many claims, however, are subject to heightened pleading standards, and many of the witnesses may well beyond the jurisdiction of the BVI High Court. *See* Declaration of Martin Kenney (Feb. 8, 2021) ¶¶ 21–22, 54–56.

To that end, Linda commenced these proceedings in the United States to seek foreign discovery and is concurrently commencing parallel proceedings in New York to pursue discovery there as well. The discovery Linda seeks in the form of the subpoenas attached to the Declaration of Reed Brodsky submitted in support of this application—document and deposition subpoenas directed to the Estate, Ms. Astafurova, and two entities, XL Funding, and Blackstone. Ms. Astafurova is Michael Fischer's longtime partner and is a director or officer of many of his companies, including XL Funding. Like Michael before he passed, Ms. Astafurova lives in the Miami area. Brodsky Decl. ¶¶ 10–12 & Exs. 9, 10. XL Funding and Blackstone purport to own

property in which Michael advised Linda she had invested.  Fischer Decl. ¶ 10; Brodsky Decl. ¶¶ 13, 15 & Exs. 11, 13.  Both entities are registered to do business in Florida and maintain their principal places of business in Florida; Blackstone purports to own property in Florida as well. Brodsky Decl. ¶¶ 13, 15 & Exs. 8, 11, 12, 13.  Linda seeks documents from each of the discovery targets.  Linda also seeks to depose Ms. Astafurova as well as to take Rule 30(b)(6) depositions of XL Funding and Blackstone.  This discovery is targeted to help Linda pursue her claims against the BVI entities that hold her stolen money and property and to recover her lost millions.

## ARGUMENT

Section 1782(a) provides that a federal district court may order discovery for use in a foreign or international tribunal from persons residing or found in the court's judicial district. Section 1782 was designed "to liberalize the assistance given to foreign and international tribunals." *In re Clerici*, 481 F.3d 1324, 1333 (11th Cir. 2007) (citation omitted).  Where the information sought is relevant, it is "presumptively discoverable under § 1782." *In re Bayer AG*, 146 F.3d 188, 196 (3d Cir. 1998).  "Consistent with the statute's modest prima facie elements and Congress's goal of providing equitable and efficacious discovery procedures, district courts should treat relevant discovery materials sought pursuant to Section 1782 as discoverable unless the party opposing the application can demonstrate facts sufficient to justify the denial of the application." *Id.* at 195.

Section 1782(a) has four statutory requirements in order for the Court to award discovery. *First*, the person from whom discovery is sought must reside in or be found in this district.  *Intel*, 542 U.S. at 247.  *Second*, the request must seek evidence, whether the "testimony or statement" of a person or the production of "a document or other thing."  *In re Clerici*, 481 F.3d at 1331–32 (quoting 28 U.S.C. § 1782(a)).  *Third*, the discovery must be "for use in a proceeding in a foreign . . . tribunal."  *Id.* at 1332.  That proceeding need not be "pending" or even "imminent" but

merely "must be in reasonable contemplation." *Intel*, 542 U.S. at 247. *Fourth*, the applicant must be an "interested person." *Id.* When all four requirements are met, the decision to grant the request rests with the district court, whose discretion is guided by four factors the Supreme Court has articulated. *Id.* at 260–61. Specifically, in considering whether to grant the requested discovery, this Court should consider: (i) whether the person from whom discovery is requested is a party to the foreign proceeding; (ii) the nature of the foreign tribunal, the character of the foreign proceeding and the tribunal's receptivity to the federal court's assistance; (iii) whether the applicant is attempting to circumvent discovery restrictions or policies of the foreign tribunal; and (iv) whether the discovery sought is unduly intrusive or burdensome. *Id.* at 264–65.

Here, the discovery Linda seeks satisfies each statutory requirement and the Supreme Court's discretionary factors all weigh heavily in favor of granting Petitioners' requested discovery. This Court should grant Petitioner's application in full.

## I.      Linda's Application Satisfies The Statutory Requirements For Granting Discovery Pursuant To 28 U.S.C. § 1782

The discovery sought in this Application easily meets the "*prima facie*" statutory requirements set forth in Section 1782. *See In re Bayer*, 146 F.3d at 196. We take each in turn.

*1. Interested Person.* As a prospective plaintiff in her contemplated BVI action, Linda is undisputedly an "interested person." *See Intel*, 542 U.S. at 256. As the Supreme Court has explained, "[n]o doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782." *Id.*; *see also In re Applic. of Bracha Found.*, 663 F. App'x 755, 762 (11th Cir. 2016) (affirming approval of Section 1782 application where it was undisputed that shareholder applicant with standing to bring contemplated derivative claim was an "interested person").

10

*2. Testimony or Statement/Document or Thing.*   Next, the type of discovery Linda seeks falls plainly within the confines of Section 1782.   Specifically, she seeks testimony from an individual and two corporations located in this District as well as documents in their possession and the Estate's possession.  Brodsky Decl. ¶¶ 2–10 & Exs. 9–13.  That type of evidence reflects the core discovery for which Section 1782 exists.  *See* 28 U.S.C. § 1782(a) (authorizing district courts to order a person "to give his testimony or statement or to produce a document or other thing").

*3. Reasonably Contemplated Foreign Proceeding.*   The discovery Linda seeks is also for use before a foreign tribunal, namely in her contemplated BVI action.  A foreign proceeding for which a court may authorize discovery under Section 1782 need not be pending or "imminent"— rather, it need merely be "within reasonable contemplation."  *Intel*, 542 U.S. at 259; *In re Clerici*, 481 F.3d at 1333.  *See also In re Dep'ts of Antioquia*, 2017 WL 6557417, at *2 (S.D. Fla. Oct. 27, 2017).  Although "future proceedings must be more than speculative," whether a proceeding is in "reasonable contemplation" depends on whether the applicant has provided "sufficient indication that a proceeding in court would eventuate . . . ."  *Applic. of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc*., 747 F.3d 1262, 1270 (11th Cir. 2014) (quoting *In re Letter of Request from the Crown Prosecution Serv. of the U.K.*, 870 F.2d 686, 691 (D.C. Cir. 1989)).  Under this permissive standard, federal courts, including in this Circuit, have granted Section 1782 applications where an applicant reasonably contemplated initiation of a lawsuit but needed to gather additional evidence before filing a suit.[1]  Similarly, to meet the liberal

---

[1]   *See Applic. of Consorcio Ecuatoriano de Telecomunicaciones*, 747 F.3d at 1271 (affirming approval of Section 1782 application where applicant needed discovery to commence civil action in Ecuador and four years had passed without any foreign proceedings commencing); *Furstenberg Finance SAS v. Litai Assets*, 877 F.3d 1031, 1035 (11th Cir. 2007) (similar); *In re Applic. of Setraco Nigeria Ltd*., 2013 WL 3153902, at *2–3 (M.D. Fla. June 19, 2013)

"for use in a foreign tribunal" requirement, the applicant must demonstrate "the ability 'to inject the requested information into a foreign proceeding' and the 'requested discovery is something that will be employed with some advantage or serve some use in the proceeding.'" *In re Ferrer*, 2018 WL 3240010, at *5 (S.D. Fla. July 3, 2018) (quoting *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 131 (2d Cir. 2017)).  Discovery can be used to "some advantage," and thus meets the "for use" requirement, even if it is not ultimately admissible.  *See In re Bernal*, 2018 WL 6620085, at *5 (S.D. Fla. Dec. 18, 2018) (even if the foreign tribunal ultimately decided not to consider the evidence sought, that "is not fatal to the § 1782 petition because the requested discovery could conceivably be used to some advantage in the foreign proceeding").

Here, Linda has clearly met her *prima facie* burden of demonstrating that the sought evidence will be used in foreign proceeding that is reasonably contemplated.  Specifically, Linda has identified corporate defendants in the BVI that purport to own property in which she invested and entities that have been and continue to be unjustly enriched as a result of the purposeful misrepresentations of their stakeholders.  Fischer Decl. ¶ 10.  She has procured the services of private investigators to conduct public records searches of the relevant entities in building her case. Fischer Decl. ¶ 12.  And she has retained local counsel in the BVI to assist in preparing her claims, and local counsel has identified timely claims available to her in the BVI.  Kenney Decl. ¶ 25.

Linda's local counsel describes in substantive detail the claims Linda could bring in her contemplated BVI suit against Viterbi.  Linda has available to her in the BVI claims for constructive trust and unjust enrichment against the BVI entities involved in Michael's fraud, among other claims.  Kenney Decl. ¶¶ 26–42.  Specifically, Michael Fischer became a constructive

---

(concluding the foreign proceeding was reasonably contemplated where applicant asserted a theory of fraud and that it "intend[ed] to pursue civil and/or criminal actions").

trustee when he undertook to invest his sister's inheritance on her behalf, and as a result, became subject to fiduciary and trustee-type duties.  Kenney Decl. ¶¶ 26–28.  To the extent that Michael used Linda's inheritance for his own purposes, he breached these duties under BVI law.  Kenney Decl. ¶ 28.  Linda can bring claims for constructive trust based on these breaches against Viterbi, and any other BVI companies under the controlling mind of Michael Fischer, because BVI law treats these companies as knowing recipients of trust property.   Kenney Decl. ¶¶ 26, 36–42.  Viterbi is also potentially liable for unjust enrichment, to the extent that the company received valuable property funded unjustly by Linda's inheritance, and for which Linda has received no valuable consideration in return.  *See* Kenney Decl. ¶¶ 29–35.  In short, the steps Linda has taken to construct her contemplated BVI action—including retaining investigators and local counsel as well as depicting in detail the contours of that prospective litigation—render the action "reasonabl[y] contemplate[ed]" under Section 1782.

Linda can also show that evidence is "for use" in that contemplated proceeding, because the evidence is relevant to her prospective BVI claims and therefore presumptively discoverable under § 1782.  *In re Bayer AG*, 146 F.3d at 195.  The documents and testimony Linda seeks pertains to the nature of the investment activities by and the unjust enrichment of the BVI defendants, including most prominently Viterbi services, the purported owner of properties that belong to Linda.  *See* Kenney Decl. ¶¶ 29–35.  And the sought evidence is even more critical because the BVI has a heightened pleading standard for claims involving fraud or dishonesty, Kenney Decl. ¶¶ 21–22.  For this reason, federal courts have granted Section 1782 applications involving BVI actions so that applicants may ensure their reasonably contemplated suit will satisfy the BVI's demanding pleading standards.  *Att'y Gen. of the British V.I. v. Hyman*, 2020 WL 2615519, at *6 (D.D.C. May 23, 2020); *accord Bracha Found.*, 663 F. App'x at 763–64 (Section 1782 application

13

granted where applicants' decision on whether to commence litigation in the British Virgin Islands depended on discovery obtained pursuant to Section 1782).  In sum, Linda has shown her sought discovery will be for use in a reasonably contemplated foreign proceeding.

    *4. Targets Found In This District.*  Finally, for purposes of Section 1782, the discovery targets—including an Estate and a natural person located in this district and corporations registered and headquartered in this district and for whom registered agents can be found in this district— "reside[] or [are] found" here.  Whether a person or corporation "resides or is found" in this district can be established through physical presence alone as well as service within the district, *In re Applic. of MTS Bank*, 2017 WL 3276879, at *7 (S.D. Fla. Aug. 1, 2017) (citing *In re Applic. of Edelman*, 295 F.3d 171, 171 (2d Cir. 2002)), or mere status as a domiciliary, *see In re Letter of Request From Dist. Court Stara Lubovna*, 2009 WL 3711924, at *2 (M.D. Fla. Nov. 5, 2009).  Similarly, courts in this district have concluded that a party that "maintains a corporate address with a corporate agent," "retains a Florida bank account," and "litigates in Florida state courts," resides or is found within this district.  *In re MTS Bank*, 2017 WL 3276879, at *7.

    Here, the individuals and entities from whom Linda seeks discovery are found within this District.  Michael's estate on information and belief is run out of and both Michael and Ms. Astafurova were and are domiciled in this District, having retained what appears to be their permanent residency in the Miami area for over a decade.  Brodsky Decl. ¶ 10 & Exs. 9–10. Similarly, each of the corporate entities are registered to do business and maintain their principal place of business in Florida, at least one owns property here, and both have registered agents here, *id.* ¶ 10, Exs. 8, 11–13.  Linda has therefore established the fourth and final statutory requirement: The individuals and entities from whom she seeks discovery plainly are found within this district.

## II.     The Discretionary Factors Weigh In Favor Of Linda's Application

In addition to the statutory requirements for Section 1782 discovery, the four discretionary factors the Supreme Court identified in *Intel* plainly weigh in favor of granting the requested discovery. *See Intel*, 542 U.S. at 264–65; *In re Clerici*, 481 F.3d at 1334.

*1. Discovery Targets Are Not Participants In The BVI Action*.  The first *Intel* factor clearly weighs in favor of awarding discovery here because none of the discovery targets are participants in Linda's contemplated BVI action.  "[Section] 1782 discovery is more likely to be justified when the person from whom the discovery is sought is not a participant in the prospective foreign proceeding because 'nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach . . . .'"  *Bracha Found.*, 663 F. App'x at 764–65 (quoting *Intel*, 542 U.S. at 264).  The focus of the inquiry is on "the person from whom discovery is sought"—not whether the evidence might be available from *other* sources.  *Intel*, 542 U.S. at 264.

Here, at least Astafurova, XL Funding, and Blackstone are not presently contemplated to be parties to the BVI action.  They may not even be subject to the BVI High Court's jurisdiction at all.  *See* Kenney Decl. ¶¶ 54–56.  As for those discovery targets in particular, this is not a situation where "[a] foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence."  *Intel*, 542 U.S. at 264.  This first factor thus weighs in favor of granting discovery here.[2]

*2.   Receptivity.*  The second *Intel* factor is also satisfied because BVI courts have historically been receptive to requests for judicial assistance from the United States.  "Receptivity" is not a question of whether any particular foreign *court* would permit discovery in this or any

---

[2]     Although the Estate might be a party to the contemplated BVI action, *see* Kenney Decl. ¶ 56, the remaining *Intel* factors plainly counsel in favor of awarding discovery against the Estate as well, particularly given the heightened pleading requirement necessary to bring suit against the Estate.  *See Hyman*, 2020 WL 2615519, at *7

other specific case; instead, it is an inquiry into how a foreign *legal system* "would be unreceptive to the § 1782 discovery." *In re Chevron Corp.*, 2012 WL 3636925, at *11; *see also In re Bayer AG*, 146 F.3d at 196; *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995) (burden is on party opposing Section 1782 discovery to prove lack of receptivity).  To show lack of receptivity, a party must provide "authoritative proof that a foreign tribunal would *reject* evidence obtained with the aid of § 1782."  *In re H.M.B. Ltd.*, 2018 WL 4778459, at *9 (S.D. Fla. July 2, 2018).

Federal courts have long held that the BVI judicial system is receptive to discovery procured through American procedural tools like Section 1782.  *Hyman*, 2020 WL 2615519, at *7; *In re Applic. of Bracha Found. Request for Discovery*, 2015 WL 6123204, at *4 (N.D. Ala. Oct. 19, 2015) ("[T]his court has no reason to believe that the BVI tribunal would not be receptive to judicial assistance by U.S. federal courts."), *aff'd in part, vac. in part on other grounds by Bracha Found.*, 663 Fed App'x 755 (11th Cir. 2016); *JSC MCC EuroChem v. Chauhan*, 2018 WL 3872197, at *5 (M.D. Tenn. Aug. 15, 2018) (affirming magistrate's finding that there is "no proof that the courts of BVI . . . would reject § 1782 discovery"); *accord* Kenney Decl. ¶¶ 49–53.  Absent "authoritative proof," *In re H.M.B. Ltd.*, 2018 WL 4778459, at *9, that these courts got it wrong (and there is none), this factor plainly weighs in favor of granting discovery.  *See In re Pimenta*, 942 F. Supp. 2d 1282, 1288 (S.D. Fla. 2013) (finding that there was nothing in the record to suggest that the foreign tribunal would be unreceptive to the application and that the second *Intel* factor weighed in favor of granting the application); *In re Chevron Corp.*, 2012 WL 3636925, at *11 (S.D. Fla. June 12, 2012) (same).

**3.  *No Attempt to Circumvent BVI Proof-Gathering Restrictions.*** The third *Intel* factor is similarly met because, as in other 1782 applications arising from BVI proceedings, the discovery

sought here does not at all attempt to circumvent BVI's proof-gathering restrictions. Notably, Section 1782 does not require that the information sought be discoverable under the procedures of the foreign tribunal. *Intel*, 542 U.S. at 261; *Weber v. Finker*, 554 F.3d 1379, 1384–85 (11th Cir. 2009). Rather, in determining whether an application amounts to an effort to circumvent foreign proof-gathering restrictions, courts consider whether the discovery is being sought in bad faith. *Minatec Fin. S.A.R.L. v. SI Group Inc.*, 2008 WL 3884374, at *8 (N.D.N.Y Aug. 18, 2008).

Here, Linda's request for discovery in this application is a good faith effort to obtain probative evidence for use in her contemplated BVI action to recover millions of dollars stolen from her over many years and in an ongoing, continuous scheme to deprive her of the value of her investments—an action for which she has already taken specific and tangible steps to commence. Fischer Decl. ¶ 12**.** The discovery sought aims to uncover the nature of the fraud and unjust enrichment that led to the loss of more than $10 million in stolen funds directed towards the prospective BVI action's defendant entities. None of this discovery would affirmatively circumvent any BVI proof-gathering restrictions. *See* Kenney Decl. ¶ 52. This factor, too, weighs in favor of granting relief.

    *4. Discovery Is Relevant And Not Unduly Intrusive or Burdensome.* The discovery Linda seeks is both relevant and not overly burdensome. Discovery under Section 1782 may be as broad and liberal as the Federal Rules allow, and may even extend beyond what is allowed under the Federal Rules. *See Intel*, 542 U.S. at 263; *In re Clerici*, 481 F.3d at 1333–35 (discovery pursuant to Section 1782 may be under Federal Rules or other practices and procedures adopted by the Court). Here, Linda seeks evidence from the entities owned by the likely defendants in her contemplated BVI defendants, as well as from those entities' directors and officers. The documents pertain to where her money went and how she will recover it from the complex holding

structure her brother established to hide the proceeds of his ongoing frauds.  And the depositional testimony she seeks will allow her to advance a BVI proceeding with sufficient particularity demonstrating the specific misrepresentations and fraudulent statements that led the BVI entities she intends to sue to receive unjustly the funds her brother and his co-conspirators stole.  This discovery is critical to the allegations that will underpin Linda's BVI lawsuit.  And none of it— including depositions and document discovery of corporate records that entities regularly turn over to stakeholders—is unduly burdensome, particularly given that the information sought will not violate "any legally applicable privilege."  *See In re Application of Mesa Power Group, LLC*, 878 F. Supp. 2d 1296, 1305 (S.D. Fla. July 13, 2012) (quoting 28 U.S.C. § 1782(a)).

* * *

In sum, then, the *Intel* factors plainly weigh in favor of granting Linda the corporate documents and testimonial evidence she seeks in this application.  This Court should grant the application in full.

## III.     It Is Routine And Proper To Grant Linda's Application *Ex Parte*

Section 1782 specifically contemplates and authorizes *ex parte* proceedings.  As an alternative to a noticed motion, a party may move *ex parte* for an order directing a third party to produce documents and to testify at a deposition.  Following the entry of the order, the third party may respond.  *See, e.g.*, *In re Alianza Fiduciaria SA*., 2013 WL 6225179, at *4 (S.D. Fla. Oct. 24, 2013) (granting ex parte application and ordering that "[a]ny objections to the discovery permitted herein must be filed with the Clerk of Court no later than fourteen (14) days from the date of this Order"); *Gushlak v. Gushlak*, 486 F. App'x 215, 217 (2d Cir. 2012) ("The respondent's due process rights are not violated because he can later challenge any discovery request by moving to quash . . . .").

Applications pursuant to Section 1782 are frequently made and granted on an ex parte basis, in which case notice even to the discovery target itself is provided after the court has already considered and ruled upon the application.  *See In re Clerici*, 481 F.3d at 1329–30 (describing the procedural history of the court's granting of the *ex parte* application, the serving of request for deposition, and the deponent's motion in opposition to the deposition for the court's review).  At that point, the target has an opportunity to file objections.  *See, e.g.*, *Bracha Found.*, 2015 WL 6123204, at *1 ("The decisions of the Eleventh Circuit Court of Appeals affirm the granting of § 1782 applications in *ex parte* proceedings, and other decisions outside the Circuit acknowledge that the use of *ex parte* § 1782 applications is widespread and that granting them is not improper based on their *ex parte* nature."); *In re Braga*, 272 F.R.D. 621, 625 (S.D. Fla. 2011) ("[M]ost § 1782 applications . . . are filed and decided *ex parte*."); *Gushlak*, 486 F. App'x at 217 ("[I]t is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte*.").  This Court should grant *ex parte* relief here.

## CONCLUSION

For the foregoing reasons, Petitioner Linda Fischer respectfully requests that the Court grant this *ex parte* Application in its entirety.

Dated:   February 9, 2021                    Respectfully submitted,


                                             */s/*        Reed Brodsky

GIBSON, DUNN & CRUTCHER LLP
Reed Brodsky (*pro hac vice* forthcoming)
Lee R. Crain (*pro hac vice* forthcoming)
Rebecca Rubin (*pro hac vice* forthcoming)
200 Park Avenue, 47th Floor
New York, NY 10166-0193
Telephone: (212) 351-3883
Facsimile:  (212) 351-5303


*/s/*        Daniel Rashbaum
MARCUS NEIMAN RASHBAUM
& PINEIRO LLP
Daniel Rashbaum
Florida Bar No. 75084
drashbaum@mnrlawfirm.com
Michael Pineiro
Florida Bar No. 41897
mpineiro@mnrlawfirm.com
Jason Mays
Florida Bar No. 106495
jmays@mnrlawfirm.com
2 S. Biscayne Blvd., Suite 1750
Miami, FL 33131
Telephone: (305) 400-4260

*Counsel for Petitioner LINDA FISCHER*